IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Robert Dale Smart, #272017          )
                                    )        Civil Action No.8:08-3918-GRA-BHH
                    Petitioner,     )
                                    )
        v.                          )        **REPORT AND RECOMMENDATION**
                                    )        **OF MAGISTRATE JUDGE**
Cecilia Reynolds,                   )
Warden of Kershaw Correctional      )
Institution,                        )
                                    )
                    Respondent.     )
_____)

        The Petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code,

Section 2254. This matter is before the court on the Respondent's Motion for Summary

Judgment (Dkt. # 30) and the Plaintiff's Motions for an Evidentiary Hearing (Dkt. # 46), and

for a Subpoena (Dkt. # 47).

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial

petitions for relief and submit findings and recommendations to the District Court.

        The Petitioner brought this habeas action on December 1, 2008.[1] On April 10, 2009,

the Respondent moved for summary judgment. By order filed April 14, 2009, pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the

summary judgment dismissal procedure and the possible consequences if he failed to

adequately respond to the motion. On May 18, 2009, the Petitioner filed a response

opposing summary judgment.

_____

        [1]The Petitioner states in his cover letter that he mailed this habeas petition to his
brother who copied the petition and filed it for the Petitioner. (Pet. Attach. # 2.) Because
this petition was not sent through a prison mailroom, the Petitioner is not entitled to the
benefit of the rule in *Houston v. Lack*, 487 U.S. 266 (1988) (holding prisoner's pleading was
filed at moment of delivery to prison authorities for forwarding to District Court). *See Grate
v. Rushton,* 2007 WL 3145016 (D.S.C. 2007). Thus, the undersigned has used the date the
petition was received by the Clerk of Court as the filing date

## **PROCEDURAL HISTORY/ FACTS**

The petitioner is presently confined in the Kershaw Correctional Institution. On November 9, 2000, the Petitioner was indicted by the Union County Grand Jury for first degree criminal sexual conduct ("CSC") with a minor. The Petitioner was represented by attorneys John B. White, Jr., and J. Mark Hayes, II. On January 16-17, 2001, the Petitioner was tried by a jury with the Honorable Howard P. King presiding. He was convicted as charged and Judge King sentenced the Petitioner to fifteen years. On January 26, 2001, the Petitioner timely filed a Notice of Appeal.

On appeal, the Petitioner was represented by attorney Tara Shurling. The Petitioner raised two issues on appeal: 1) whether the trial court erred in admitting into evidence drawings with unduly prejudicial hearsay inscriptions; and 2) whether the trial court erred in denying the Petitioner's motion for a new trial where a therapist's testimony tended to improperly identify the Petitioner as the perpetrator. In an unpublished opinion filed on December 16, 2002, the South Carolina Court of Appeals affirmed the Petitioner's conviction. (Supp. App. 1-6). The remittitur was sent down on January 7, 2003.

On March 3, 2003, the Petitioner filed an application for post-conviction relief ("PCR") raising the following grounds for relief: 1) trial counsel was ineffective for failing to object to and move for a mistrial based on the identification testimony of the witness Sharon Wright, who was qualified as an expert in the field of child sexual abuse treatment and psychotherapy; trial counsel was ineffective for failing to object to the assistant attorney general's improper comments on the Petitioner's silence and failure to present a defense; and 3) trial counsel was ineffective for failing to subpoena and call witnesses who would have provided the Petitioner with an alibi defense. (App. 427-432.)

On October 11, 2005, an evidentiary hearing was held before the Honorable John C. Hayes, III. (App. 438-531.) The Petitioner was present and represented by Frank

2

Eppes, Esquire. *Id.* On March 27, 2006, Judge Hayes denied the Petitioner's application for PCR. (App. 532-38.) On April 10, 2006, the Petitioner filed a pro se motion to reconsider and/or alter the judgment. (App. 452-53.) On April 21, 2006, the PCR Court denied the petitioner's motion to reconsider. (App. 548.) The Petitioner timely filed a notice of appeal.

On appeal, the Petitioner was represented by Wanda H. Carter, Chief Attorney of the South Carolina Commission on Indigent Defense Division of Appellate Defense. On December 7, 2006, the Petitioner moved to relieve counsel and file his appeal pro se. On January 18, 2007, the South Carolina Supreme Court denied the Petitioner's motion to relieve counsel. On February 20, 2007, the Petitioner's counsel filed a petition raising the following issues: 1) whether trial counsel erred in failing to properly preserve the issue of the drawings entered into evidence in the case for the appeal; 2) whether trial counsel erred in failing to object and preserve for appeal error where the expert's testimony regarding the victim's reaction to the Petitioner's pictures exceeded the time and place parameters. On February 7, 2008, the South Carolina Supreme Court denied the Petitioner's petition for a writ of certiorari. The remittitur was sent down on February 26, 2008.

In *State v. Smart*, UP-781-2002 (S.C. Ct. App. filed Dec. 16, 2002), the South Carolina Court of Appeals summarized the facts of this case as follows:

> The female victim, who was eight years old at the time of trial, testified that a man named Dale "put his fingers in [her] private part." One incident happened around Thanksgiving 1997, when Dale was babysitting the victim at her house. The victim testified Dale was the only one to touch her in this manner. During her testimony, the victim identified the defendant Robert Dale Smart as Dale.
>
> The victim's mother testified the victim was four years old during the time from July 1997 through November 1997. She explained Smart babysat the victim on a regular basis until Thanksgiving 1997. The mother testified that during this period the victim was often red between her legs. The mother stated the redness appeared after Smart had access to the victim or was around her.

3

The mother testified she first learned of the sexual assault in December 1997 after Dr. Hammond, a urologist, examined the victim. The victim had been referred to Dr. Hammond because of persistent blood in her urine. Dr. Hammond performed a cystoscopy on December 17, 1997, and found external trauma to the urethra, laceration to a hymenal ring, and vaginal irritation. According to his diagnosis the victim had been manipulated and he believed to a reasonable degree of medical certainty there had been sexual penetration. Dr. Hammond's observations of the victim were consistent with sexual trauma occurring before or around Thanksgiving 1997.

Dr. Nancy Henderson, an expert qualified in the fields of adolescent medicine and child sexual abuse, met with the victim on January 6, 1998. She opined the victim suffered from sexual trauma. Sharon Wright, an expert qualified in the fields of child sexual abuse treatment and psychotherapy, treated the victim from February 26, 1998, to September 16, 1999. She concluded the victim was suffering from posttraumatic stress disorder. The victim told her she had been sexually assaulted "a lot of times."

Former police officer Perry Haney testified that based upon his investigation the events involving the victim occurred between July 11 and November 27, 1997. He determined "there were possibly numerous individual instances" of sexual assault between those dates.

(Return Attach. # 3.)

## **Federal Habeas Petition**

The Petitioner filed this habeas action raising the following grounds for relief, quoted

verbatim:

**Ground One:** Factual innocence, variance of indictment proving third guilt and prosecutorial misconduct to cover it up. **Supporting Facts:** The wound was to fresh for the Petitioner to have done is on the Extended Forensic Assessment of Alleged Child Sexual Abuse by Kim Rosborough. Brxx denied that Petitioner abused her. Brxx also told DSS that Petitioner never put his finger into my vagina. The Petitioner was not the baby sitter. Dr. Hammond testified that the likelihood is great that the child was sexually abused after the 27th. Petitioner never saw BRxx after Nov. 27, 1995. Please read pages 16 - 22 paragraphs 1 - 5a for better explanation.

**Ground Two:** Judicial misconduct, he ordered the jury not to take note he also vouched for the victims testimony.

4

**Supporting Facts:** In the Judges opening remarks he ordered the jury Tr 25 L25: "It's my not to allow noting taking unless the case is going to be extremely long, technically involved. " When the Judge charged the jury he stated Tr386 L13: "I would like to charge you, Mr. Foreman and members of the jury, that section 16-3-657 of our code of laws provides that the testimony of the victim need not be corroborated in prosecutions under this section. Please see page 27 paragraph 17 for more details.

**Ground Three:** Petitioner was incompetent to stand trial due to the Tezners spraying the Petitioners vehicles with toxins.
**Supporting Facts:** The Petitioner has lab reports where he had arsenic and mercury in his blood and hair. He also had arsenic smeared on his steering wheel. Plus he his SCDC mental evaluation stating that he was a paranoid schizophrenic. Please see pages 29 thru 38 for more details. Petitioner had 0.5MCG/DL of arsenic and 0.5 MCG/DL of Mercury in his blood and 1.4 MCG/G of Arsenic in his hair three February 18, 1998.

**Ground Four:** Trial attorney did not call Dawn Burns of DSS to testify, or Kim Rosborouqh to testify, to show inconsistant testimony. or anyone.
**Supporting Facts:** The Tezners (SIC) told DSS and Rosborouqh one thing and testified to something totally different. Please read page 16 thru 43 for the lies and perjury used to obtain this conviction.

**Ground Five:** The child victim was coached by her mother and the Prosecutor.
**Supporting Facts:** Please see rial transcript Tr 83 L-14-24 A, "Mama don't want me to tell nobody." Q- "Mama don't want you to tell nobody? Okay, and so mama talked to you about what you would testify here today, didn't she?" A. Yep, Q- And if mama says that she doesn't want you tell, then you're going to tell, are you?" A. "Right. Q, Okay that's because mama --- she sort of runs the roost around your house, doesn't she?" This turns Brxx's testimony into inadmissible hearsay. A coached witness is a violation of due process. This is a violation of the 6th and 14th Amendments. She was also coached by Brad Cranshaw the prosecutor. Please see page 25 Paragraph 11 for more supporting facts.

**Ground Six:** The petitioner was also accused of sexually abusing Dawn Jolly at trial.
**Supporting Facts:** DSS investigated and found that the accusation was unfounded. This was perjury on the part of the mother. Misconduct by the Prosecutor and criminal slander by trial attorney. This was variance of indictment, criminal slander, perjury, withholding evidence from the jury, inadmissible hearsay at a trial by jury. See Page 23 Paragraph 8 for more

information. This was a violation of the 5th, 6th and 14th Amendments.

**Ground Seven:** The Mother told DSS one thing and testified to something totally different.
**Supporting Facts:** Trial attorney nor Prosecutor came forward to set the record straight about the perjury of the mother. Please see pages 16 thru 43 for supporting facts.

**Grounds Eight:** The indictment was a rubber stamped and the delay prejudiced the Petitioner.
**Supporting Facts:** Please see page 39 Paragraph 22 for supporting facts.

**Grounds Nine:** The Petitioner was called the Godfather this perjury prejudiced the Petitioner.
**Supporting Facts:** Please see page 38 paragraph 20 for supporting facts. Petitioner was called the Godfather seven times at trail. Petitioner was not the Godfather, not Uncle Dale and not the baby sitter. This was perjury and bias, used to obtain a conviction. This was a violation of the 6th and 14th Amendments.

**Ground Ten:** The Father did not testify, a confrontation issue.
**Supporting Facts:** The father did not testifying turned the arrest warrant and the indictment into inadmissible hearsay. Please see page 27 paragraph 16 for more facts.

**Ground Eleven:** PCR attorney had a conflict of interest.
**Supporting Facts:** PCR attorney did not call any witnesses. He did not help the Petitioner put any of the mother's perjury on the transcripts. He was paid to investigate but he did not do that either. This is a violation of the 6th and 14th Amendments.

**Grounds Twelve:** The father threatened the Petitioner, no one told the Petitioner of these threats, the Tezners tried to kill Petitioner.
**Supporting Facts:** Please see page 35 paragraph 19d and 19e for supporting facts. This was a violation of the 14th Amendment if a woman had been threatened she would have been informed. Part of this information was with held for the jury.

**Ground Thirteen:** Evidence of the Petitioner's innocence was with held from the jury.
**Supporting Facts:** Please see the Kim Rosborough Report for supporting facts. The Kim Rosborough report plainly states that the wound was to fresh for the Petitioner to have done. She should have been called to the trial to testify. Prosecutor misconduct. A violation of the 6th and 14th Amendments.

**Ground Fourteen:** The state violated due process by not proving the Petitioner had Custody of the child.
**Supporting Facts:** Petitioner never had custody and under state law, the prosecutor must prove the Petitioner had custody to prove abuse. See trial transcript: Tr 90 L 18 Q- "have you always had custody - - you and your husband always had custody of Brxx?" A. "Yes, sir." This was a violation of due process, the 6th and 14th Amendments.

**Grounds Fifteen:** One of the jury lied to the court.
**Supporting Facts:** Please see Page 41 paragraph 25 for supporting facts.

**Grounds Sixteen:** Trial attorney did not request alibi defense for the Petitioner.
**Supporting Facts:** Petitioner filed motion for alibi defense because he was not the baby sitter, lived in the next county and both parents were unemployed. One or both parents were always at home in the small three room house. The mother testified that Petitioner never saw Brxx after November 27, 1997. The doctor testified that the likelihood is greater that the wound happened after the 27th. The Kim Rosborough report also states that the wound was to fresh for Petitioner to have done. With holding this information was ineffective assistance of counsel, prosecutorial misconduct a violation of the 6th and 14th Amendments. The Petitioner Appeal went to the South Carolina Supreme Court and was denied.

**Ground Seventeen:** Sharon Wright's testimony was inadmissible hearsay and bolstered the victims testimony.
**Supporting Facts:** This is the only issue raised by Wanda Carter. Please see Page 39 paragraph 22 for supporting facts.

**Ground Eighteen:** All Petitioner are allowed to raise some issue to the South Carolina Supreme Court but Petitioner was not allowed to raise any issues at all.
**Supporting Facts:** Other inmates are sent a letter and they are allowed to raise some issues but Petitioner has never received such a letter. This happened during the appeal and Petitioner was turned down and his type writer were broke at the same time. This is a violation of due process, the 6th and 14th Amendments.

**Ground Nineteen:** The Petitioner was put in prison to stop him from filing any civil action against any of the Doctors that he went to for the toxic poisoning or anybody else.
**Supporting Facts:** The South Carolina Department of Correction has denied the Petitioner access to the courts, taken an out of Court Settlement in the Wrongful Termination case of

Smart v Spartanburg Steel Products with held Petitioner's final brief in Smart v Dr. Smith (C.A.2003-CP-42-4406). They also took legal material in front of Petitioner. Please see page 36 paragraph 19j and 19k for supporting facts. This happened after the Petitioner went to PCR and after he filed the 59(e) motion.

**Ground Twenty:** The Tezners tried to kill Petitioner brother in April of 2008.
**Supporting Facts:** Brady Smart totalled his car out, he told Petitioner that someone had tampered with his breaks. Some one tampered with Sterling Spann's sister's brakes that killed her. Please supporting facts page 43 paragraph 29. This happened this year.

**Ground Twenty-one:** This selective and vindictive prosecution.
**Supporting Facts:** None of the Attorneys raised any of the Petitioner grounds and no one would help the Petitioner properly raise these issues. The Prosecutor used Sharon Wright's testimony as a way to avoid the rest of Petitioner's issues. The Prosecutor allowed perjury and a coached victim testify and with held exculpatory information from the jury. This was a violation of the 6th and 14th Amendments.

**Ground Twenty-two:** The trial trascripts have been altered since February of this year.
**Supporting Facts:** Petitioner read that trial attorney testified that Petitioner's doctors had assured him that Petitioner had not been poisoned in February of 2008. The Petitioner wrote and asked the attorney and family doctors about this. Mark Hayes testimony has also changed, he stated that he had proved third Party guilty, none of this is on the transcripts now. PCR attorney did not argue Petitioner's variance of indictment at PCR it is on the transcripts now. PCR attorney was not paid for the appeal because of this and Petitioner was out of money but brother would have helped him. The Petitioner testified that he had memory problems, the state has tried to take advantage of the Petitioner in this matter. This is a due process violation of the 6th and 14th Amendment.

**Ground Twenty-three:** The police have refused to arrest the Tezners.
**Supporting Facts:** The Teszners threatened to kill Petitioner in front of Dr. Hamndr Sharon Wright Ms. PeHuff and M s . O'Brian and DSS workers. The Petitioner has tried to get them arrested, Investigator Bailey of Union came to Ridgeland CI in 2006 and SLED came several months later to talk about Petitioner's claims. The state is either trying to cover up Petitioner's poisoning or they are calling Petitioner a liar. Please see page 42 paragraph 27 and 28 for supporting facts. If this

would have happened to a woman they would both be in prison now. This is a due process violation of the 14th Amendment.

**Ground Twenty-four:** The lingering affects of the poisoning has left the Petitioner unable to eat the food SCDC provides to prisoners.
**Supporting Facts:** Every time Petitioner eats eggs, tuna, or mayonnaise, the petitioner breaks out in hive and gets sick. This year SCDC told Petitioner that if these food make you sick don't eat them. This is 60% of the food served to inmates. They stir-up the toxins in Petitioner system or they contain toxins. Learning what you can and can not eat takes a while to figure out. Petitioner filed first and second stage grievances. The Petitioner totally quit eating rice last years after getting extremely sick. Please see page 35 paragraph 19i. This is cruel and unusual punishment. A violation of the 8th Amendment.

(Hab. Pet. 9-21.)

## APPLICABLE LAW

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved

for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must

demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is

entitled to summary judgment as a matter of law. As to the first of these determinations, a

fact is deemed "material" if proof of its existence or nonexistence would affect the

disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that

a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining

whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## HABEAS STANDARD OF REVIEW

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

## EXHAUSTION AND PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## DISCUSSION

The respondent contends that this habeas petition should be dismissed because all of the grounds raised by the Petitioner are procedurally barred. The undersigned agrees.

As stated above, when a petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application. Here, the Petitioner raised only two issues to the South Carolina appellate court in his direct appeal: 1) whether the trial court erred in admitting into evidence drawings with unduly prejudicial hearsay inscriptions; and 2) whether the trial court erred in denying the Petitioner's motion for a new trial where a therapist's testimony tended to improperly identify the Petitioner as the perpetrator. Furthermore, in the appeal of the denial of his PCR application, the Petitioner raised only the following two issues: 1) whether trial counsel erred in failing to properly preserve the issue of the drawings entered into evidence in the case for the appeal; 2) whether trial counsel erred in failing to object and preserve for appeal error where the expert's testimony regarding the victim's reaction to the Petitioner's pictures exceeded the time and place parameters.

In Ground One, the Petitioner asserts that he is factually innocent. This claim was not ruled upon by the PCR Court in the PCR Order and the Petitioner did not raise this claim in his Rule 59 motion nor in his PCR Appeal.[2]

In Ground Two, the Petitioner asserts that the trial court erred by not allowing jurors to take notes, by vouching for the victim's testimony, and by not allowing the jury to review charts that were used in the presentation of the State's case at trial. In Ground Three, the Petitioner asserts that he was incompetent to stand trial. In Ground Four, the Petitioner contends trial counsel was ineffective for not calling Dawn Burns of DSS or Kim Rosborough to testify. None of the claims were ruled upon by the PCR Court in the PCR Order. While

---

[2]The petitioner contends that the PCR Court ruled on this issue. (Pet'r's Mem. Opp. Summ. J. Mot. at 10.) The undersigned disagrees. However, in any event, the Petitioner does not dispute that he did not raise this issue in his PCR appeal.

the Petitioner arguably raised these claims in his Rule 59 motion, none of the claims were raised in his PCR Appeal.

In Ground Five, the Petitioner contends the victim's testimony was inadmissible hearsay as a result of coaching and the coaching violated his due process rights. The second claim was arguably raised in the Petitioner's PCR proceeding. However, neither claim was ruled upon by the PCR Court. Furthermore, while the Petitioner raised these claims in his Rule 59 motion, he did not raise them in his PCR Appeal.

In Ground Six, the Petitioner asserts a claim of prosecutorial misconduct for perjury for mentioning that he was accused of sexually abusing another child. Second, he asserts ineffective assistance of trial counsel in the handling this matter. The second claim was arguably raised in his PCR. However, neither claim was ruled upon by the PCR Court. Furthermore, while the Petitioner raised both claims in his Rule 59 motion, he did not raise either claim in his PCR Appeal.

In Ground Seven, the Petitioner alleges another claim of prosecutorial misconduct claim based upon his allegation that the State did not correct testimony made by the victim's mother. He also alleges trial counsel was ineffective for failing to correct the victim's mother. Both claims were arguably raised in the Petitioner's PCR. However, they were not ruled upon by the PCR Court. Furthermore, while the Petitioner raised these claims in his Rule 59 motion, he did not raise either claim in his PCR Appeal.

In Ground Eight, the Petitioner raises several issues regarding the indictment. He contends the indictment was deficient because it was not timely sought, the indictment was faulty because the only person who testified to the grand jury was Detective Haney, and the indictment was inadmissible hearsay because the father of the victim signed the arrest warrant but did not appear before the grand jury. The first claim was raised at PCR. However, the second and third claims were not raised and none of these claims were ruled

upon by the PCR Court.   Furthermore, while the Petitioner raised the first claim in his Rule 59 motion, he did not raise any of these claims in his PCR appeal.

In Ground Nine, the Petitioner contends trial counsel was ineffective for not objecting to allegedly incorrect testimony that the Petitioner was the victim's godfather and uncle and the prosecution committed misconduct by mentioning that the Petitioner was the victim's godfather in its opening and closing statements, and eliciting testimony supporting those statements from the victim's mother.   Both of these claims were raised in his PCR. However, neither claim was ruled upon by the PCR Court.    Furthermore, while the Petitioner raised both claims in his Rule 59 motion, he did not raise either claim in his PCR Appeal.

In Ground Ten, the Petitioner alleges Confrontation Clause violations because the victim's father signed the arrest warrant, but did not testify before the Grand Jury, Family Court, or at trial.  This claim was not properly raised at trial nor in the Petitioner's direct appeal. *See Drayton v. Evatt*, 430 S.E.2d 517, 519 (S.C.1993) (holding issues that could have been raised at trial or on direct appeal can not be raised in a PCR application absent a claim of ineffective assistance of counsel). While the Petitioner raised this claim in his PCR proceeding, the PCR Court did not rule on it.

In Ground Eleven, the Petitioner contends his PCR counsel was ineffective for failing to assist the Petitioner in establishing his PCR claims. These claims were not raised in state court at any time.

In Ground Twelve, the Petitioner contends that the victim's father threatened to kill him. The Petitioner did not initially raise this claim in his PCR proceeding.  While he did raise this claim in his Rule 59 motion, the Petitioner did not raise this issue on appeal.

In Ground Thirteen, the Petitioner contends the prosecutorial committed misconduct by withholding Kim Rosborough's report from the jury and failing to call her as a witness. He also alleges trial counsel was ineffective for not presenting the report or calling Rosborough

to testify.  Although the Petitioner raised these claims in his PCR proceeding, the PCR Court did not rule on them.  Furthermore, while the Petitioner raised these issues in his Rule 59 motion, he did not raise these claims in his PCR Appeal.

In Ground Fourteen, the Petitioner asserts that his due process rights were violated because the State did not prove that the Petitioner had custody of the child. The Petitioner raised this claim in his PCR proceeding, however the PCR Court did not rule on this issue. Furthermore, while the Petitioner raised this claim in his Rule 59 motion, he did not raise this issue in his PCR Appeal.

In Ground Fifteen, the Petitioner contends one of the jurors engaged in perjury because did not admit that he knew the Petitioner.  The Petitioner raised this claim in his PCR proceeding, however, the PCR Court did not rule on it.  The Petitioner did not raise this claim in his Rule 59 motion nor in his PCR Appeal.

In Ground Sixteen, the Petitioner contends his trial counsel was ineffective for not raising an alibi defense. This issue was raised and ruled upon his PCR proceeding, but the Petitioner did not raise this claim in his PCR Appeal.

In Ground Seventeen, the Petitioner contends that Sharon Wright's testimony at trial was inadmissible hearsay and her testimony improperly bolstered the victim's testimony. The Petitioner raised these issues in his PCR proceeding.  However, the PCR Court did not rule on these issues and the Petitioner did not raise these claims in his Rule 59 motion nor in his PCR Appeal.

In Ground Eighteen, the Petitioner alleges his due process rights was violated because he was not allowed to file a *Johnson* Petition with the South Carolina Supreme Court.[3]  This claim was not raised in state court.

---

[3]*Johnson v. State*, 364 S.E.2d 201 (S.C.1988) (applying the factors in *Anders v. California,* 386 U.S. 738 (1967), to PCR appeals).

18

In Ground Nineteen, the Petitioner contends that he was incarcerated to prevent him from filing a lawsuit against doctors who allegedly hid the fact that he was poisoned. The Petitioner raised this claim in his PCR proceeding, but the PCR Court did not rule on it. Further, the Petitioner did not raise this claim in his Rule 59 motion not in his PCR Appeal.

In Ground Twenty, the Petitioner contends that the parents of the victim attempted to kill his brother in April 2008. In Ground Twenty-One, the Petitioner contends that his attorneys did not assist him in raising some grounds. In Ground Twenty-Two, the Petitioner asserts that the trial transcripts were altered in some way. None of these claims were raised in state court.

In Ground Twenty-Three, the Petitioner asserts that the police failed to arrest the parents of the victim in his case, despite the fact that they have allegedly threatened to kill him in front of witnesses. The Petitioner raised this claim in his PCR proceeding, but the PCR Court did not rule on this issue and the Petitioner did not raise this claim in his Rule 59 motion nor in his PCR Appeal.

In Ground Twenty-Four, the Petitioner asserts that the lingering effects of the alleged poisoning he suffered has left him unable to eat food provided by the SCDC. The Petitioner raised this claim in his PCR proceeding, but the PCR Court did not rule on this issue and the Petitioner did not raise this claim in his Rule 59 motion raise it in his PCR appeal.

As set out above, when a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the issue in his federal habeas petition. *Smith v. Murray,* 477 U.S. 527, 533 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999); *Coleman,* 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be

procedurally impossible to raise now, then it is procedurally barred from federal habeas review. All of the Petitioner's issues are procedurally barred as these claims were either not raised or ruled upon at trial or in a PCR proceeding and/or not fairly presented to the South Carolina appellate courts.

When a state prisoner has defaulted his claims in state court, habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. at 750 The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the State's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986).

The Petitioner argues that he tried to raise several of the above issues to the South Carolina Supreme Court in his PCR appeal, but the state court denied him the opportunity to proceed pro se. (See generally Pet'r's Mem. Opp. Summ. J. Mot.) After filing his notice of appeal, the Petitioner filed a motion to relieve his appellate PCR counsel and for

permission to proceed pro se.[4]  (Return Attach. # 12.)  The South Carolina Supreme Court denied this motion.  (Return Attach. # 13.)

Although a defendant has a constitutional right to self-representation at trial pursuant to the sixth Amendment, *Faretta v. California,* 422 U.S. 806, 821 (1975), there is no federal constitutional right to self-representation on appeal.  *Martinez v. Court of Appeal*, 528 U.S. 152, 161 (2000).  Furthermore, there is no South Carolina state constitutional provision which confers such a right.  *State v. Roberts*, 614 S.E.2d 626, 629 (S.C. 2005).

The Petitioner has failed to show cause for his procedural default on this issue. *Rodriguez v. Young,* 906 F.2d 1153, 1159 (7th Cir.1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court.").  Nor does the undersigned find that the Petitioner has met his burden of showing actual innocence, or that a fundamental miscarriage of justice will occur if this claim is not considered.  *Wainwright v. Sykes, supra; Murray v. Carrier,* 477 U.S. 478, 496 (1986)("where a constitutional violation has probably resulted in the conviction of one who is actually innocent").  Actual innocence is defined as factual innocence, not legal innocence.  *Bousley v. United States,* 523 U.S. 614, 622 (1998). The Petitioner must demonstrate that did not commit the crime of which he was convicted."  *United States v. Mikalajunas,* 186 F.3d 490, 494 (4th Cir.1999).

---

[4]The undersigned notes that the petition to proceed pro se which the Petitioner filed was not a *Johnson* petition.  In *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), the South Carolina Supreme Court adopted a procedure for appeal where appellate counsel concludes that the PCR applicant has no meritorious grounds to present. Counsel is required to file a *Johnson* petition raising any issue which is arguably appealable and requesting leave to withdraw as attorney for the petitioner on appeal. A copy of the brief is furnished to the petitioner and he is notified that he has a specific period of time to furnish further information to the Supreme Court for consideration in making a determination as to the *Johnson* petition. Further, the petitioner may file a pro se brief raising additional issues.  *Foster v. State,*  379 S.E.2d 907 (S.C. 1989).  In Ground Eighteen, the Petitioner alleges his due process rights were violated because he wanted to file a *Johnson* petition, but his counsel refused.  As noted earlier, this specific issue was not raised in state court and therefore is procedurally barred.  *King v. Netherland,* 1997 WL 461906 W.D.Va.,1997 (unpublished)(because the petitioner failed to raise, either on direct appeal or in his state habeas petition, a claim alleging that the state courts violated his constitutional right to proceed pro se, the court concludes that King has not exhausted this claim.).

Further, to prevail under an "actual innocence" theory, the Petitioner must produce new evidence that was not available at trial to show his factual innocence. *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir.1999). *See Schlup v. Delo,* 513 U.S. 298, 324 (1995)(to present a credible claim of actual innocence, petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."). The Petitioner has not shown his actual innocence through the presentation of any new reliable evidence which was not available at trial.

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. *See Karsten v. Kaiser Foundation Health Plan,* 36 F.3d 8, 11 (4th Cir.1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations. Accordingly, the undersigned will not discuss the merits of the Petitioner's claims.

**Petitioner's Motion for an Evidentiary Hearing**

The Petitioner also filed a motion for an evidentiary hearing because he states that he did not receive an adequate PCR hearing in state court. (Dkt. # 46 - Pet'r's Mot. for Evidentiary Hearing.) The Respondent opposes this motion. (Dkt. # 62.) This undersigned concludes that this motion should be denied.

Even if a federal habeas petitioner did not receive the opportunity to develop an evidentiary basis for his claims in state court, a federal habeas court "is permitted to hold [an evidentiary] hearing only if the petitioner alleges additional facts that, if true, would entitle him to relief." *Fullwood v. Lee,* 290 F.3d 663, 681 (4th Cir. 2002) (internal citation and quotation marks omitted). Specifically, under 28 U.S.C. § 2254(e)(2), a petitioner must show that:

(A) the claim relies on -

>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Upon review of the record, the undersigned concludes that the Petitioner has failed to demonstrate the necessity for an evidentiary hearing based upon any of the § 2254(e)(2) provisions. Accordingly, his request for an evidentiary hearing should be denied.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Petitioner's Motion for an Evidentiary Hearing (Dkt. # 46) be DENIED; the Respondent's Motion for Summary Judgment (Dkt. # 30) be GRANTED; and the habeas petition be DISMISSED with prejudice.

It IS FURTHER RECOMMENDED that, if the District Court adopts the above recommendation, the Petitioner's Motion for a Subpoena (Dkt. # 47) be DENIED as moot.

IT IS SO RECOMMENDED.

_____
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

October 21, 2009
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).